Ramon Corporation v. Commissioner.
Ramon Corp. v. Commissioner
Docket No. 9288.
United States Tax Court
1947 Tax Ct. Memo LEXIS 163; 6 T.C.M. (CCH) 732; T.C.M. (RIA) 47179; June 26, 1947
*163 Held, petitioner corporation realized no gain by the distribution in kind of certain of its assets in partial liquidation. Alexander B. Siegel, Esq., 25 Broad St., New York, N. Y., for the petitioner. Albert H. Monacelli, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion Respondent determined a deficiency of $21,210.25 in petitioner's income tax for 1943. The question is whether petitioner realized any gain as a result of the distribution of certain of its assets to its stockholder in exchange for shares of its own stock which were promptly cancelled and retired. Findings of Fact Petitioner is a corporation organized under the laws of Delaware with principal office at Ridgewood, New Jersey. Its *164 tax return for the year involved was filed with the collector for the fifth district of New Jersey. Petitioner is a personal holding company. Petitioner's authorized capital stock, as indicated by its certificate of incorporation filed with the Secretary of State, Delaware, on March 10, 1925, consisted of 5,000 shares of Class A common stock and 30,000 shares Class B common stock, all of the par value of $100 a share a total of $3,500,000. The only difference between the A and B stock was that the A stock had voting rights and the B stock did not. On December 13, 1943, all of petitioner's outstanding stock, consisting of 1,346.40 shares of Class A and 8,077.85 shares of Class B, was owned by Carl H. Pforzheimer. On December 8, 1943, Pforzheimer signed a formal consent to the reduction of capital of Ramon Corporation. The instrument provided that Pforzheimer - "hereby consents in writing to the reduction of capital of this Corporation from Nine Hundred Forty-Two Thousand Four Hundred Twenty-Five Dollars ($942,425), composed of One Thousand Three Hundred Forty-Six and 40/100 (1,346.40) shares of Class A Stock of the par value of One Hundred Dollars ( $100) each and Eight Thousand *165 Seventy-Seven and 85/100 (8.077.85) shares of Class B Stock of the par value of One Hundred Dollars ( $100) each to Eight Hundred Twenty-Four Thousand Six Hundred Twenty-Two Dollars ($824,622), to be composed of One Thousand Three Hundred Forty-Six and 40/100 (1,346.40) shares of Class A stock of the par value of One Hundred Dollars ( $100) each and Six Thousand Eight Hundred Ninety-Nine and 82/100 (6,899.82) shares of Class B Stock of the par value of One Hundred Dollars ( $100) each, and further consents that such reduction of the capital of the Corporation may be effected through the retirement by purchase at private sale of One Thousand One Hundred Seventy-Eight and 3/100 (1,178.03) shares of Class B Stock of the par value of One Hundred Dollars ( $100) each at a price or prices payable chiefly in securities owned by the Corporation to be delivered in kind, the value of which shall not exceed the ratable share of the assets of the Corporation which would be applicable to said shares of stock in the event of its immediate dissolution and in any event shall not exceed the par value thereof and by the charge against the capital of the Corporation of the par value thereof." On December 9, 1943, a *166 certificate of reduction of petitioner's capital, containing provisions practically identical with those of the formal consent set out above, was duly executed by petitioner's officers and filed in the office of the Secretary of State of Delaware on December 10, 1943. The certificate was published in the Wilmington Morning News on December 13, 20, and 27, 1943. On December 13, 1943, a special meeting of the petitioner's board of directors was held at which, in addition to the transaction of certain other business, it was decided to deliver to Pforzheimer certain of petitioner's assets consisting of 500 shares of American and Foreign Power Second Preferred, 500 shares of American and Foreign Power $7 Preferred, 300 shares of J. I. Case, and 1,200 shares of Creole Petroleum Corporation, upon the surrender by him for cancellation of 1,178.03 of his Class B stock in petitioner, the par value of the shares to be charged against the capital of petitioner. It was further decided that an amendment should be filed to petitioner's certificate of incorporation reducing its authorized capital stock from $3,500,000 to $839,900, consisting of 1,399 shares of Class A stock and 7,000 shares of Class *167 B stock, all of $100 par. On the same day, a stockholders' meeting of the petitioner was held, at which the amendment to the certificate of incorporation recommended by the board of directors was approved. Thereupon, a "Certificate of Amendment of Certificate of Incorporation" of the petitioner was executed and filed in the office of the Secretary of State, Delaware, on December, 14, 1943. On or about December 13, 1943, petitioner delivered to Pforzheimer the 500 shares of American and Foreign Power Second Preferred, 500 shares of American and Foreign Power $7 Preferred, 300 shares [of] J. I. Case, 1,200 shares of Creole Petroleum Corporation, together with a written instrument reciting that petitioner - "in consideration of the surrender to it in complete cancellation by CARL H. PFORZHEIMER, holder of record thereof, of One Thousand One Hundred Seventy-Eight and 03/100 (1,178.03) shares of the Class B Stock of Ramon Corporation, hereby assigns, transfers and delivers and distributes to said Carl H. Pforzheimer in partial liquidation and in exchange for the cancellation of said One Thousand One Hundred Seventy-Eight and 03/100 (1,178.03) shares of Class B Stock of Ramon Corporation *168 all those certain securities owned by it, said Ramon Corporation, and listed and enumerated on the annexed Schedule A, plus the sum of Three Hundred Twenty-Eight Dollars ( $328) in cash, hereby acknowledging the surrender by Carl H. Pforzheimer and the complete cancellation of the aforesaid One Thousand One Hundred Seventy-Eight and 03/100 (1,178.03) shares of Class B Stock." On the same day, Pforzheimer delivered to petitioner his certificate for 1,178.03 shares of petitioner's Class B stock, and petitioner promptly cancelled and retired the stock, making appropriate charges therefor to its capital account. The securities transferred by petitioner to Pforzheimer were acquired by petitioner in the period from January 1931 to June 1940 at an aggregate cost of $23,700, and on December 13, 1943, had an aggregate fair market value of $117,475. In his return for 1943 Pforzheimer reported his gain on the partial liquidation. Some time after receiving these securities, on a split-up of the 300 shares of J. I. Case, Pforzheimer received 1,200 shares. Both classes of American and Foreign Power stock and the J. I. Case stock were sold by Pforzheimer in October, November and December 1944. *169 He sold 100 shares of Creole stock in May 1945 and the remaining 1,100 shares of that stock in 1946. Respondent determined that petitioner realized a gain on the transaction in question, measured by the difference between petitioner's cost and the fair market value of the securities on the date distributed to Pforzheimer. Opinion ARUNDELL, Judge: Both in form and in substance the transaction here in question was a distribution in partial liquidation within the meaning of sections 115 (c) and (i) of the Internal Revenue Code. It is settled that a corporation realizes no gain upon the distribution of its assets in kind as an ordinary dividend. General Utilities & Operating Co. v. Helvering, 296 U.S. 200, First State Bank of Stratford, 8 T.C. 831 (No. 92). We see no reason, and none has been suggested, why the result should be any different in the case of a liquidating dividend. Indeed, the Commissioner's Regulations (111, sec. 29.22 (a)-20) provide that - "No gain or loss is realized by a corporation from the mere distribution of its assets in kind in partial or complete liquidation, however they may have appreciated or depreciated in value since their *170 acquisition." We agree with the petitioner that Lencard Corporation, 47 B.T.A., is practically on all fours with the instant case. Although the respondent acquiesced in that decision, 1942-2 C.B. 12, on brief, he has not even mentioned the case or made any attempt to distinguish it. The arguments which he makes here, however, to the effect that the transaction was a sale of assets by the petitioner, were much the same as the arguments which he made in that case and which we rejected. Likewise, he is here relying on many of the same cases which he cited there and which we distinguished. On the authority of that case, therefore, we hold that the petitioner realized no gain from the transaction in question. Decision will be entered for the petitioner.